UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BEAUMONT HOSPITAL,

        Plaintiff,

v.

MORGAN STANLEY & CO., L.L.C. ET
AL.,

        Defendant.

_____/

Case No. 14-10404

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [23]

Plaintiff filed suit against Defendants on January 28, 2014. Defendants filed a

Motion to Dismiss the Second Amended Complaint on April 24, 2015 [23]. Plaintiff's

Response was filed on May, 15, 2015 [28] and Defendants replied [29] on May 29,

2015. A hearing was held before the Court on October 19, 2015 where argument was

presented on this Motion. For the reasons stated below, Defendants' Motion to

Dismiss the Second Amended Complaint [23] is **GRANTED.**

### FACTUAL BACKGROUND

This case involves the Plaintiff financing in ARS. ARS are "debt securities with long-

term maturities that pay investors at rates that are reset at short-term intervals-

typically every 7, 28, or 35 days. The interest rate is usually determined by a reverse

'Dutch Auction' in which investors bid on ARS through a broker-dealer such as

1

Defendants." [23 at 4-5]. An Auction for ARS 'fails' if the bids are insufficient to cover the shares available for sale.

In 2005, Plaintiff was seeking funds to renovate and construct health facilities and sought investment bankers to advise and assist with the structuring of a debt issuance. Beginning in summer 2005, Plaintiff worked with Defendants to structure the upcoming bond issuance and to explore other financing opportunities. On March 20, 2006, Plaintiff executed its bond purchase agreements with Defendants for Defendants to purchase the ARS and make a public offering of them. [23-3; 23-4]. These ARS were issued with "fixed" maximum rather than "formulaic" maximum rates of interest. These were not the first purchases of ARS that Plaintiff had made. Previously, Plainitiff had issued ARS in 2003 with formulaic rates.

Simultaneously with the issuance of its 2006 ARS, Plaintiff also entered into interest rate swap transactions with Defendant affiliates. [23-7; 23-8]. In addition to seeking guidance from Defendants, Plaintiff also sought guidance from a financial advisor that they hired, Kaufman Hall, who provided advice on the swap and bond issuance completed in 2006.

In August and September 2007, 60 ARS auctions, totaling over $6 billion, failed and this erosion of the markets continued into January and February 2008. Because of the status of the markets in February 2008, Defendants and other broker-dealers stopped placing support bids in auctions as the markets began not to function.

2

The markets that Plaintiff was invested in never failed, however the decreased demand and higher clearing levels made Plaintiff pay investors higher rates of interest than it had previously paid.

Plaintiffs allege that Defendants failed to divulge that the success of the ARS and their swap agreement would depend entirely on the continued placing of support bids by Defendants in every auction for Plaintiff's ARS; and that without these constant bids, Plaintiff's bond structure would fail. Had Plaintiff known the truth regarding the support bids and the lack of a truly independent market, it is alleged they would not have structured their bonds in ARS.

### STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b).  On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

When a Plaintiff's claims sound in fraud, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In the Sixth Circuit, to meet the requirements that Rule 9(b) of the Federal Rules of Civil

Procedure imposes on fraud claims, a Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir.2008). These heightened pleading requirements apply both to frauds committed by misrepresentation and/or by omission. *Gilmore v. First Am. Title Ins. Co.*, 2009 WL 2960703, at *3 (E.D. Mich. Sept. 11, 2009). Misrepresentation claims founded in the same fraudulent course of conduct are also held to the heightened pleading standards of Fed. R. Civ. P. 9(b). *Smith v. Bank of America Corp.*, 485 F. App'x 749, 752 (6th Cir.2012)

## ANALYSIS

### 1. STATUTE OF LIMITATIONS

Under Michigan law, the statute of limitations for fraud and misrepresentation claims is six years. *See* Mich. Comp. Laws § 600.5813 (fraud); *Blue Cross & Blue Shield of Mich. V. Folkema*, 436 N. W. 2d 670, 673 (Mich. Ct. App. 1988) (applying a six-year limitations period to misrepresentation claim where "damages are sought for injury to the plaintiff's financial expectations"). A claim for fraud accrues when "the wrong upon which the claim is based was done, regardless of the time when the damage results." Comp. Laws Ann. § 600.5827. There is no discovery accrual standard for claims of fraud or misrepresentation. Boyle v. Gen. Motors Corp., 468 Mich. 226, 231-232 (2003).

4

Defendants argue that the fraud and misrepresentation claims accrued when Plaintiff executed the contract that it alleges it was fraudulently induced to sign. Because these agreements were executed in March 2006, it is asserted that the limitations period expired in March 2012, and thus Plaintiff is time-barred from bringing this complaint.

Plaintiff argues that the harm it suffered as a result of Defendant underwriters' fraud occurred when the ARS market collapsed in February 2008, meaning that their claims would have been timely, as filed on January 28, 2014. [28 at 24]. In support of this contention, Plaintiff cites a decision in the Southern District of New York, which considered this question under Louisiana state law. The Court in that case determined that the economic loss at issue was sustained when the ARS market crashed, causing the fraud claims to accrue, not at the signing of the contract. *In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d 264, 275 (S.D.N.Y. 2010). This argument is misplaced. The Louisiana state law applied in that case provided that the statute of limitations "commences to run from the day injury *or damage* is sustained. [Emphasis supplied]" La. Civ. Code art. 3492. By contrast, Michigan Law expressly differentiates between harm and damages, and provides that the time in which to file commences when the *harm* occurs.

Michigan case law supports the view that a fraud or misrepresentation claim alleging fraudulent inducement to enter into a contract accrues when the Plaintiff

5

enters into the contract, because the harm is suffered when the contract is signed. *See e.g. Stockler v. Reassure Am. Life Ins. Co.*, No. 11-CV-15415, 2013 WL 866486, at *5 (E.D. Mich. Mar. 7, 2013) (holding that the claim accrued when Plaintiff purchased a policy based on fraudulent misrepresentations); *Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, 2007 WL 1264008, at *6 (Mich. Ct. App. May 1, 2007) (holding the same). Plaintiff's complaint plainly alleges that it relied on the allegedly fraudulent omissions and misrepresentations when it signed the contract with Defendants. The act of signing the contracts in March 2006 was thus the harm that was suffered from the fraudulent omissions and misrepresentations, which ultimately caused the damages that were ultimately incurred with the crash of the ARS market in 2008. The case at bar was filed on January 28, 2014, more than eight years after the contract was signed, and well outside the six-year limitation. Because the statute of limitations expired before Plaintiff filed his benefits claim, Defendants' motion to dismiss the claim is granted.

## 2.   FAILURE TO STATE A CLAIM

Even if the complaint had been timely filed, this Court would still be required to dismiss the Second Amended Complaint for failure to state a claim. To properly plead fraud, a Plaintiff must allege that:

> (1) the defendant made a representation that was material; (2) the representation was false; (3) the defendant knew the representation was false, or the defendant's representation was made recklessly without any knowledge of the potential truth; (4) the defendant made the

6

representation with the intention that the plaintiff would act on it; (5) the plaintiff actually acted in reliance; and (6) the plaintiff suffered an injury as a result.

*Stephens v. Worden Ins. Agency, L.L.C.*, 869 N.W.2d 614 (Mich. 2015). Beaumont's claims of fraud and misrepresentation are based on omissions and misrepresentations that the ARS market was self-sustaining, rather than dependent upon constant and continued support bids by broker-dealers, which were made to induce Plaintiff to enter into the agreement to purchase bonds.

Plaintiff's fraud and misrepresentation claims cannot stand because of disclosures provided by Defendants prior to the purchase of the bonds at issue, and which in fact were restated by Plaintiff itself. Thus, in an official statement dated March 14, 2006, Plaintiff described its financing plan, including the bonds at issue in this case. As described by Plaintiff:

> broker-dealers [also] routinely place one or more bids in auctions generally to prevent a failed auction or a clear rate it believes is not a market rate. While they may do so with respect to the Bonds, they are not obligated to do so and may elect not to do so…Broker-dealers may submit Orders for their own accounts in an Auction in order to prevent the auction from failing, they are not obligated to do so, and there is no assurance that any one or more Auctions will not fail. [23-2 at 48-9]

Further, in disclosing potential risk, Plaintiff stated:

> If, as noted above, the number of Bonds offered for sale exceeds the number offered to be purchased in any Auction, the Auction will fail and beneficial owners may not be able to sell their Bonds at that time. Their ability to sell outside an Auction may also be adversely affected by a relative lack of demand for the Bonds. The relative buying and selling

7

> interest of market participants in Bonds, both within and outside of an
> Auction, will vary over time. [23-2 at 49].

This disclosure succinctly sets forth the very facts and occurrences Plaintiff alleged were fraudulently withheld. The disclosures acknowledge that Defendants' bids supporting the Auction, and preventing its failure, could in fact occur, but also that Defendants were not obligated to make these bids, and that there was thus no assurance that the Auctions might not fail as a result of a decision to refrain from issuing such bids. Because of this disclosure by the hospital, there is no actionable fraud or misrepresentation claim alleged in the second amended complaint.

Moreover, the disclosures by Plaintiff itself are nearly identical to those that Defendants provided on their websites prior to the issuance. In these disclosures, Defendants stated that they were "permitted, but not obligated, to submit Orders in Auctions for its own account, either as a Bidder or a seller and routinely does so in the [ARS] market in its sole discretion." [23-5; 23-6]. The disclosure also warned that "the fact that an Auction clears successfully does not mean that an investment in the securities involves no significant liquidity or credit risk" and cautioned issuers that broker-dealers "are not obligated to continue to place such Bids…to prevent an Auction from failing or clearing at a Rate we believe does not reflect the market for the securities…issuers should not assume that we will do so or that Failed Auctions will not occur." *Id*.

8

When considering these disclosures, Courts consistently have concluded they negate the possibility of an actionable omission, under various federal and state law fraud claims. *See e.g. In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d 264, 283 (S.D.N.Y. 2010); *Ashland Inc. v. Morgan Stanley & Co., Inc*, 652 F. 3d 333 (2d Cir.2011). Indeed, the very same disclosures at issue in this case resulted in dismissal of common-law fraud and other claims against one of the Defendants because they "revealed that Morgan Stanley routinely placed bids in its own auctions, in part to prevent auctions from failing." *Ashland*, 652 F. 3d at 338-39. The disclosures of both parties demonstrate Plaintiff understood there was no guarantee that the markets would not fail and that Defendant was not obligated to continually place support bids to prevent such potentially catastrophic failures. There is no actionable fraud or misrepresentation claim concerning the cover bids.

Courts have also found nearly identical disclosures to prevent any possible reliance on claimed omissions by plaintiffs concerning the risk of the ARS market and have dismissed state claims of fraud and misrepresentation because of these disclosures. *See e.g., In re UBS Auction Rate Sec. Litig*., 2010 WL 2541166, at *22 (S.D.N.Y. June 10, 2010); *Ashland,* 652 F.3d at 338; *Merrill I*, 704 F. Supp. 2d at 395-97; *In re Merrill Lynch Auction Rate Sec. Litig. Merrill II* 375, 385-86 (S.D.N.Y. 2011)*.* Because the disclosures illustrated precisely how the ARS market functioned

9

and that support bidding was not an obligation, it would be unreasonable to rely on any alleged omissions or misrepresentations occurring before the signing of the bond agreement. Therefore, even if the claims were not time barred, the Court would still be required to dismiss Plaintiff's fraud and misrepresentation claim.

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED.**


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: January 19, 2016                 Senior United States District Judge

10